**J. Hannah FRANK**

**v.**

**THE GOVERNMENT OF THE CITY OF MORRISTOWN.**

Court of Appeals of Tennessee, Eastern Section, at Knoxville.

April 22, 2008 Session.

July 31, 2008.

Permission to Appeal Denied by Supreme Court Jan. 20, 2009.

Benjamin Lauderback, Knoxville, Tennessee, for the appellant, the Government of the City of Morristown.

James M. Davis, Morristown, Tennessee, for the appellee, J. Hannah Frank.

## OPINION

SHARON G. LEE, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

The city of Morristown appeals a judgment in favor of a commercial leaseholder who brought an inverse condemnation and nuisance action against the city for dam- ages allegedly sustained as a result of dirt, debris, odor, noise, and interference with ingress and egress caused by the city's road and bridge construction project. After careful review, we reverse the judgment of the trial court as to the inverse condemnation claim upon our finding that the damages complained of by the leaseholder were the necessary effects of careful construction and not different from the effects suffered by the leaseholder's neighbors and because damages resulting from inconvenience during construction are not recoverable. We also reverse the trial court's judgment in favor of the leaseholder upon the claim of nuisance because the leaseholder failed to establish that the construction project was conducted in an unreasonable manner.

## I. Background

Hannah Frank owns and operates Skilled Hands Shoe Repair, a business she opened in leased premises on West First North Street in Morristown, in January of 1986. In late October of 2004, the City of Morristown ("the City") began work on a road and bridge construction project in front of Ms. Frank's shoe repair shop. Ms. Frank maintains that as a result of noise, odor, dirt, and debris caused by the construction project, and the City's periodic closing of West First North Street to facilitate construction and consequent elimination of access to her shop, she experienced a significant loss of business and, in January of 2005, was compelled to move her shop to a different location approximately three-quarters of a mile away. Thereafter, the construction project continued until its completion on July 1, 2005. Ms Frank continues to operate her business from her new location, which she describes as being one-half the size of the original premises on West First North Street and for which she pays rent in the

amount of $315 per month, as compared to the $400 per month she was paying at her former location.

On April 28, 2005, Ms. Frank filed a complaint against the City for inverse condemnation and nuisance attributed to the City's construction project. Ms. Hannah's complaint requested compensation "for damage to her existing business, relocation expense, loss of business revenue, past and future expenses and other damages plaintiff will incur as a result of the damage to her business." The complaint also requested an award of reasonable attorney's fees and discretionary costs. Later, Ms. Frank was allowed to amend her complaint to add a claim for interest on amounts awarded and to allege that noxious odors emanated onto her property from a sewer line ruptured during construction and that the road construction "caused noise and obstruction to her business and that in addition there was dirt and debris that emanated into her leased property."

After a one day bench trial, the trial court ruled in favor of Ms. Frank, finding that the City had created a temporary nuisance and that there was a temporary taking of Ms. Frank's property by the City, entitling her to $7,200 damages for diminution of leasehold value; $2,973.68 incidental damages; prejudgment interest at the rate of 10% from April 28, 2005, until payment of judgment; reasonable attorney's fees in the amount of $3,387.84; and discretionary costs in the amount of $506.88. The City appeals.

## II. Issues

We address the following issues:

1) Whether the trial court erred in ruling that Ms. Frank was entitled to compensation from the City for inverse condemnation.

2) Whether the trial court erred in ruling that Ms. Frank was entitled to compensation from the City for the creation of a temporary nuisance.

### III. Analysis

#### A. Standard of Review

In a non-jury case such as this one, we review the record de novo with a presumption of correctness as to the trial court's determination of facts, and we must honor those findings unless the evidence preponderates to the contrary. Tenn. R.App. P. 13(d); *Union Carbide v. Huddleston*, 854 S.W.2d 87, 91 (Tenn.1993). The trial court's conclusions of law are reviewed de novo and are accorded no presumption of correctness. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn.1996); *Presley v. Bennett*, 860 S.W.2d 857, 859 (Tenn.1993). A trial court's decisions regarding the admission of evidence, including witness testimony, are, as matters of law, reviewed de novo.

#### B. Inverse Condemnation

The Tennessee Supreme Court has stated as follows regarding eminent domain and inverse condemnation:

The Tennessee Constitution states that "no man's particular services shall be demanded, or property taken, or applied to public use, without the consent of his representatives, or without just compensation being made therefor." Tenn. Const. art. I, § 21. This constitutional provision recognizes the governmental right of eminent domain. The government is prohibited, however, from taking property for private purposes and must pay just compensation when property is taken for public use. *See Jackson v. Metro. Knoxville Airport Auth.*, 922 S.W.2d 860, 861 (Tenn.1996). The Tennessee General Assembly has implemented this provision by its passage of

eminent domain and inverse condemnation statutes. *See* Tenn.Code Ann. §§ 29–16–101 to 29–16–127 (2000 & Supp.2002); 29–17–101 to 29–17–1202 (2000). "Inverse condemnation" is the popular description for a cause of action brought by a property owner to recover the value of real property that has been taken for public use by a governmental defendant even though no formal condemnation proceedings under the government's power of eminent domain have been instituted. *See Johnson v. City of Greeneville*, 222 Tenn. 260, 435 S.W.2d 476, 478 (1968).

*Edwards v. Hallsdale–Powell Util. Dist. Knox County, Tenn.*, 115 S.W.3d 461, 464–65 (Tenn.2003).

In the instant matter, the City did not institute formal condemnation proceedings as to the property leased by Ms. Frank, and accordingly, her cause of action is for inverse condemnation. Ms. Frank's causes of action for both nuisance and inverse condemnation are based upon allegations that her leasehold was affected by noxious odors emanating from a sewer line that was ruptured as a result of the City's construction project; by noise, dirt, and debris created by the project; and that the project interrupted ingress and egress to her business. The record indicates that the street fronting Ms. Frank's shop was closed intermittently between October of 2004 and the time of Ms. Frank's relocation in January of 2005 and was closed on an ongoing basis from April 2005 until completion of the construction project in early July of 2005. We respectfully disagree that an award of damages for inverse condemnation was warranted based upon any of these allegations.

In *Ledbetter v. Beach*, 220 Tenn. 623, 421 S.W.2d 814 (1967), the Tennessee Supreme Court was presented with a factual situation that we believe is analogous to the one now before us, and the Court's decision in that case provides guidance in the instant matter. In *Ledbetter*, the plaintiffs filed suit against the county after the county condemned a right-of-way for a highway within ten feet of the plaintiffs' property line and 125 feet from the back of the plaintiffs' residence. The county began construction of the highway on this right-of-way, which the plaintiffs alleged resulted in "the noise of heavy duty machinery, dirt and dust created by grading and leveling off of the road area, and the general impairment of the private use which the plaintiffs might otherwise have made of their property." *Id.* at 814. Ruling against the plaintiffs, the Supreme Court cited the following language from an earlier decision:

> Owners of land, no part of which has been taken for public purposes, are not entitled to compensation for damages naturally and unavoidably resulting from the careful construction and operation of the public improvement which damages are shared generally by owners whose lands lie within the range of the inconveniences necessarily attending that improvement.

*Ledbetter*, 421 S.W.2d at 819 citing *State v. Rascoe*, 181 Tenn. 43, 178 S.W.2d 392, 395 (1944). No proof was presented in the matter at bar that the noise, dust, and debris and obstruction of access to Ms. Frank's business were anything other than the natural and unavoidable result of a carefully conducted construction project, and the record does not show that the property leased by Ms. Frank was peculiarly damaged by such. Testimony and photographs presented at trial indicate that various other businesses near Ms. Frank's shop, including a real estate and insurance office, a bedding store, and an electronics store, were equally exposed to

the adverse conditions complained of by Ms. Franks.

■ Further, while we do not doubt that Ms. Frank and her customers were inconvenienced by the effects of the City's construction project, it has long been the law in this state that a party may not recover damages for inconvenience caused by road construction. *State v. Cooper*, No. 89–200–II, 1989 WL 130598 (Tenn.Ct.App. E.S., filed Nov. 3, 1989). In *Cooper*, the Tennessee Department of Transportation condemned a temporary construction easement in front of the defendant landowners' service station for use in widening the highway and constructing curb and guttering between the defendants' property and the state right-of-way. The defendants argued that the trial court erred in failing to allow testimony regarding the effect of the state's use of the temporary construction easement upon accessibility to the defendants' service station during construction. Citing the Tennessee Supreme Court's decision in *Acker v. Mayor and Aldermen of Knoxville*, 117 Tenn. 224, 96 S.W. 973, 976 (1906), we reiterated the rule that "[d]amages resulting from inconvenience during construction are not recoverable in a condemnation action." Noting the "prevailing rule" as set forth in *Nichols on Eminent Domain* that profits lost as a result of the necessary interruption of a business by condemnation are not recoverable as damages, we further stated as follows:

> In accordance with the prevailing rule, it has been held that mere inconvenience in carrying on the business by reason of a condemnation cannot be considered. Thus, in the absence of statutory authorization to the contrary, the temporary obstruction of a highway ... resulting in the interruption of such business, does not give rise to a claim for compensation. Where, as the result of the improvement of a street, there is diversion of traffic causing a loss to a business

fronting upon such street it has been held, generally, that such loss is not to be considered in fixing the damages of the owner of such business.

*Cooper*, 1989 WL 130598, at *4.

Like the interruption of access to the defendants' service station in *Cooper*, the interruption of ingress and egress to Ms. Frank's shop was temporary, and under the authority of that case, she is not entitled to an award of damages for such interruption.

Finally, it does not appear that the trial court made any finding with respect to Ms. Frank's allegation that the construction project caused the rupture of a sewer line which resulted in the emanation of noxious odors onto her business premise. At trial, Ms. Frank admitted that she did not know what caused the odors, and Jamie Cardin, a civil engineer who worked with the City managing the construction project, testified without contradiction that the project did not result in any ruptured sewer line, but rather, that the odors were released during an unrelated sewer rehabilitation project when the City uncovered aged sewer lines that were already broken. Accordingly, Ms. Frank's allegation that the construction project at issue resulted in the rupture of a sewer line causing damage to her business is not supported by the evidence.

### C. Nuisance

■ The City also argues that the trial court erred in awarding Ms. Frank compensation upon the ground that the noise, dirt, debris, and obstruction caused by the construction project constituted a nuisance. We agree.

As stated by the Tennessee Supreme Court in *Pate v. City of Martin*, 614 S.W.2d 46, 47 (Tenn.1981), "[a] nuisance has been defined as anything which annoys

or disturbs the free use of one's property, or which renders its ordinary use or physical occupation uncomfortable." Under the circumstances presented in the present matter, it is clear that the noise, dirt, debris, and obstruction complained of annoyed or disturbed Ms. Frank's free use of her leasehold and rendered its ordinary use uncomfortable. However, as this court has further noted, "[t]he key element of any nuisance is the reasonableness of the defendant's conduct under the circumstances." *Sadler v. State,* 56 S.W.3d 508, 511 (Tenn.Ct.App.2001); *Charles v. Latham,* No. E2003–00852–COA–R3–CV, 2004 WL 1898261 (Tenn.Ct.App. E.S., filed Aug. 25, 2004). "[A]cts of the government are not nuisances per se and it is actionable only when a nuisance is established by evidence that the governmental function is conducted in an unreasonable manner." Am.Jur.2d *Nuisances* § 130.

Our careful review of the record reveals no finding by the trial court that the City acted unreasonably at any time during the construction project. No evidence was presented that the offending noise, dirt, and debris were the result of any unreasonable action by the City and with regard to closure of the street in front of Ms. Frank's shop, the trial court specifically observed that had the City kept one lane of the street open, Ms. Frank "couldn't complain about the lack of access, you know, but they couldn't and get the project done apparently ... or they couldn't get it done right or they couldn't get it done the best way...." In the absence of any finding that the City acted unreasonably in conducting the construction project, we hold that Ms. Frank failed to establish that the matters complained of constituted a compensable nuisance.

### IV. Conclusion

We acknowledge that various other issues were raised in this appeal; however, it is our determination that these additional issues are pretermitted by our decision herein. For the foregoing reasons, the judgment of the trial court is reversed. Costs of appeal are assessed to the appellee, J. Hannah Frank.