TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00482-CV







Travis County, Texas, Appellant



v.



Will Thurman, Jr., Appellee







FROM THE PROBATE COURT NO. 1 OF TRAVIS COUNTY


NO. 2126, HONORABLE GUY HERMAN, JUDGE PRESIDING








 Travis County appeals from a trial-court judgment that awards appellee, Will
Thurman, Jr., $157,505.50 in damages for property acquired by the county in an eminent-domain
proceeding. We will affirm the judgment.



THE CONTROVERSY


 The County sued to acquire 5.315 acres of land from a 40.35 acre tract owned by
appellee. At trial, the parties stipulated that the value of the remainder on the date of taking was
$175,382, but disputed the value of the property before the taking. The County adduced evidence
that the highest and best use of the property before the taking was to hold the tract for future
development. Clinton Sayers, appellee's expert witness, testified that the highest and best use of
the property would be to mine it for sand and gravel for two years, reclaim the property in the
third year, and hold the property for future development in the fourth year. Sayers used both the
income-appraisal approach and the market-comparable approach to arrive at his opinion regarding
the value of the property before the taking. Concerning the income approach, Sayers testified
there were approximately 522,000 tons of recoverable sand and gravel deposits having a value of
sixty-five cents per ton. The property could be refilled in the third year, after mining operations
had depleted the sand and gravel deposits, and held for future development in the fourth year. 
Concerning the market-comparable approach, Sayers stated the land would be worth $250,000 in
his opinion, after the minerals had been extracted, discounted to a present value of $162,000. 
Sayers then gave his opinion that the market value of the property was $436,000 ($162,000 plus
income from the mining operations). On the date of taking there was no sand and gravel
operation on the property. It had not been leased for future development. Appellee had merely
begun, in anticipation of mining sand and gravel in the future, the necessary permit process.

 The trial court found the market value of the whole property to be $332,887.50,
and rendered judgment that appellee take $157,505.50, or the difference between the value of the
whole and the stipulated value of the remainder. 



DISCUSSION AND HOLDINGS


 The County's first point of error complains the trial court erred in denying the
County's requested finding of fact number seven. Proposed finding of fact number seven
provided as follows:



7. [The fair market value of the whole property] was calculated as follows: The
Court considered the property before the taking to be a sand and gravel mining
operation with 510,000 tons of minable sand and gravel which can be mined
in three years and reclaimed in the fourth year. The sand and gravel is worth
55 cents per ton royalty which was multiplied by the 510,000 tons of minable
sand and gravel. The Court discounted this amount using a 13% discount rate
which results in a before the taking value of $8,250.00 per acre which totals
a fair market value of the whole property on the date of taking at $332,887.50.



 It is well-established that court is required on request to make only findings of
ultimate fact, and not findings on any evidentiary matters that support them. Glecker v. Denton,
149 S.W.2d 213, 215 (Tex. Civ. App.--Austin 1941, writ dism'd judgm't cor.); accord Dura-Stilts
Co. v. Zachry, 697 S.W.2d 658, 661 (Tex. App.--Houston 1985, writ ref'd n.r.e.); Griffith v.
Griffith, 584 S.W.2d 499, 500 (Tex. Civ. App.--Beaumont 1979, no writ); Ogle v. Enterprises
Ltd. Co., Inc., 538 S.W.2d 175, 177 (Tex. Civ. App.--Dallas 1976, no writ); Sauer v. Johnson,
520 S.W.2d 438, 442 (Tex. Civ. App.--Austin 1975, writ ref'd n.r.e.). The matters referred to
in the proposed fact finding were evidentiary in nature. We overrule the County's first point of
error. 

 The County's second point of error complains first that the trial court erred by
admitting opinion evidence regarding the market value of the property based on future profits,
royalty payments, and the value of the sand and gravel. Relying primarily on Reilly v. State, 382
S.W.2d 116 (Tex. Civ. App.--San Antonio 1964, writ ref'd n.r.e.), the County asserts that future
profits are too speculative to be considered as a basis for estimating market value. In Reilly, the
court affirmed the trial court's ruling as to the inadmissibility of evidence regarding business
income realized from sand and gravel excavation. The court distinguished inadmissible evidence
of business profits (1)
 from evidence tending to show the market value of sand and gravel in the
ground, or in situ. Id. at 120. Sand, gravel, and other materials should not be valued separately
from the real property; testimony as to the value of such materials should be restricted to the
market value of the materials in their natural state rather than their value after they are severed
from the realty. Id. at 121.



An expert may testify as to the value of gravel as it lies in the natural state as a
basis for his opinion of market value of the property. Sand and gravel underlying
condemned land partakes of the nature of realty. Mineral deposits, when taken as
part of the whole property condemned, are proper to be taken into consideration
in a determination of the whole value.



State v. Angerman, 664 S.W.2d 794, 796 (Tex. App.--Waco 1984, writ ref'd n.r.e.). The fact that
no mining operations had been conducted on the property has no effect on the general rules
applicable to condemnation cases. Brazos River Auth. v. Gilliam, 429 S.W.2d 949, 952 (Tex.
Civ. App.--Fort Worth 1968, writ ref'd n.r.e.). The value of sand and gravel deposits, as part of
the realty, must be taken into consideration in valuing the whole property. Id. In Gilliam, the
court held that an expert may be examined and cross-examined as to the value-per-cubic-yard of
gravel in place, multiplied by the number of yards in existence, "as an element in opinion
evidence as to value of the realty." Id.; see also Angerman, 664 S.W.2d at 796; Coastal Indus.
Water Auth. v. Trinity Portland Cement Div., 523 S.W.2d 462, 468 (Tex. Civ. App.--Houston [1st
Dist.] 1975, writ ref'd n.r.e.). That was the substance of Sayers's testimony here.

 The County also argues that appellee made no showing that a market for sand and
gravel existed on the date of the taking, thus rendering even more speculative Sayers's including
the value of the materials in arriving at his opinion as to the market value of the whole. See Perry
v. Texas Mun. Power Agency, 667 S.W.2d 259, 265 (Tex. App.--Houston [1st Dist.] 1984, writ
ref'd n.r.e.) (testimony regarding adjacent lignite leases held inadmissible because landowner had
not established existence of market for lignite); Coastal, 523 S.W.2d at 467 ("landowner must
make a showing of some sort of market, poor or good, great or small, for the commodity in
question"). We find in the record that Sayers testified he consulted Buddy McGraw, Kirt
Fitzpatrick, and Tom Granberry, persons knowledgeable in the sand and gravel business, about
the marketability of the sand and gravel on the property. And when asked whether there was an
ample market for the "select fill" found on the property, Sayers testified there was a strong
demand for the materials because of the amount of construction activity in Austin. Sayers based
his market analysis not only on existing leases in the area, but also on his knowledge as a real
estate appraiser regarding the sand-and-gravel market in general.

 The County complains next that evidence of royalty payments and the value of the
sand and gravel after it has been extracted are inadmissible. In Reilly, the court reasoned that
testimony as to "special royalty payments" was inadmissible "(1) because the value of excavated
material is not admissible, (2) for the same reasons that income and profits are not admissible, and
(3) because a right to royalty is nothing more than an option to purchase in the future, and such
options are not admissible." 382 S.W.2d at 122. 

 The following discussion transpired between Sayers and appellee's counsel on
direct examination:



Q: Let me ask you, Mr. Sayers, in your analysis, does the landowner receive the
65 cents per ton regardless of whatever business risks are associated with the
extraction of the materials?


A: Yes. It's just -- he would be paid that by the operator, and the operator would
come in and take the material, so he would not be involved in the operator's
business in any way. 



On cross-examination of Sayers the following occurred:



Q: But isn't it your opinion that . . . to try to value this tract on the retail value,
would be valuing on the minerals extracted and not in situ; is that correct?


A: Well, I didn't value it on a retail basis. That would be business value or
something that's not related to the real estate.


Q: That's exactly where I'm going. You did not value it that way, and one of the
reasons is because it's actually extracted; is that correct?


A: Well, if the landowner did the extracting and sold the material on a retail
basis, that is something other than real estate value. That's some additional
value. You'd have a mining operation. 


 . . . . 


Q: However, you do not believe that a royalty rate is valuing minerals as they're
extracted, do you?


A: The royalty rate is the rate that's paid for the material as it sits there right
now, and then the amount that's paid, or the amount of material that's taken
out is based on the royalty rate and that indicates the income for the property
owner.


 Thus Sayers assigned a market value to the sand and gravel only as it lay in its
natural state in the ground. The royalty contemplated is not dependant upon the landowner
excavating the sand and gravel and receiving the market rate for the "loose" materials "on the
truck" as was the case in Reilly. See Reilly, 382 S.W.2d at 119. An expert witness may properly
consider the value of the sand and gravel in place in arriving at an opinion regarding the market
value of the condemned land. See Brazos River Conservation & Reclamation Dist. v. Costello,
169 S.W.2d 977, 988-89 (Tex. Civ. App.--Eastland 1943, writ ref'd); City of Teague v. Stiles, 263
S.W.2d 623, 629 (Tex Civ. App.--Waco 1953, writ ref'd n.r.e.). We overrule the County's
second point of error. 

 The County's third point of error complains the evidence was legally and factually
insufficient without the evidence discussed above. Because we hold such evidence was
admissible, we overrule point of error three. We affirm the trial-court judgment. 



 

 John Powers, Justice

Before Justices Powers, Kidd and B. A. Smith

Affirmed

Filed: September 27, 1995

Do Not Publish

1.   Sand and gravel deposits are distinguishable from future business profits and
income from existing leases that are "too uncertain, speculative, conjectural and remote to
be considered as a basis for computing market value." See Reilly, 382 S.W.2d at 122. The
court explained that business profits ordinarily depend on factors other than the market value
of the property condemned, such as the capital invested in the business, general business
conditions, and the trading skill of the owners of the business. Id. at 120. See also Julius L.
Sackman & Patrick J. Rohan, Nichols' The Law of Eminent Domain § 19.06[1] (1990 & Supp.
1995) (business profits depend on many subjective factors including amount of capital
invested, skill and management of business owners, social, religious and financial position of
owners in community; fact that business owner made business profits in past does not prevent
future losses).



usiness risks are associated with the
extraction of the materials?


A: Yes. It's just -- he would be paid that by the operator, and the operator would
come in and take the material, so he would not be involved in the operator's
business in any way. 



On cross-examination of Sayers the following occurred:



Q: But isn't it your opinion that . . . to try to value this tract on the retail value,
would be valuing on the minerals extracted and not in situ; is that correct?


A: Well, I didn't value it on a retail basis. That would be business value or
something that's not related to the real estate.


Q: That's exactly where I'm going. You did not value it that way, and one of the
reasons is because it's actually extracted; is that correct?


A: Well, if the landowner did the extracting and sold the material on a retail
basis, that is something other than real estate value. That's some additional
value. You'd have a mining operation. 


 . . . . 


Q: However, you do not believe that a royalty rate is valuing minerals as they're
extracted, do you?


A: The royalty rate is the rate that's paid for the material as it sits there right
now, and then the amount that's paid, or the amount of material that's taken
out is based on the royalty rate and that indicates the income for the property
owner.


 Thus Sayers assigned a market value to the sand and gravel only as it lay in its
natural state in the ground. The royalty contemplated is not dependant upon the landowner
excavating the sand and gravel and receiving the market rate for the "loose" materials "on the
truck" as was the case in Reilly. See Reilly, 382 S.W.2d at 119. An expert witness may properly
consider the value of the sand and gravel in place in arriving at an opinion regarding the market
value of the condemned land. See Brazos River Conservation & Reclamation Dist. v. Costello,
169 S.W.2d 977, 988-89 (Tex. Civ. App.--Eastland 1943, writ ref'd); City of Teague v. Stiles, 263
S.W.2d 623, 629 (Tex Civ. App.--Waco 1953, writ ref'd n.r.e.). We overrule the County's
second point of error. 

 The County's third point of error complains the evidence was legally and factually
insufficient without the evidence discussed above. Because we hold such evidence was
admissible, we overrule point of error three. We affirm the trial-court judgment. 



 

 John Powers, Justice

Before Justices Powers, Kidd and B. A. Smith