WALTER CHAPMAN et al., Plaintiffs-in-Error, v. MAYOR AND BOARD OF ALDERMEN OF THE CITY OF MILAN, TENNESSEE, Defendants-in-Error. —344 S. W. (2d) 773.

Western Section, Jackson. October 26, 1960.

Certiorari Denied by Supreme Court March 10, 1961.

Holmes & Holmes, Harrell & Nowell, Trenton, for plaintiffs in error.

Drake & Flippin, Milan, for defendants in error.

AVERY, P. J. (W. S.). This is an action by Walter Chapman and wife, Corinne Chapman, John Best and wife, Frances O. Best, all of Gibson County, Tennessee,

against the Mayor and Board of Aldermen of the City of Milan, Tennessee, a municipal corporation, by authority T. C. A. Section 23-1423, seeking to recover compensation for real property taken for street purposes and incidental damages to the remainder of the property, for which the City of Milan had not compensated them.

The property is fully described in the declaration which alleges that the actual property taken was approximately 21 feet across the entire front along North First Street, a distance of approximately 207 feet. The property is located at the intersection of said North First Street with what was formerly Highway 45 East before the said highway was changed to its present location.

This property was conveyed to the original plaintiffs in two separate lots and located thereon is a residence and a business building occupied by Walter Chapman and John Best as partners, as a tractor and farm implement and sales service agency. The declaration alleges that after the property was acquired by these original plaintiffs they erected a large modern building thereon in which their business was housed and from which it was conducted, under the trade name of ''Chapman and Best Implement Company.''

The original declaration alleged that this taking by the defendant has resulted in actual and incidental damages to the property and, therefore, to the plaintiffs' total damages in the amount of $25,000.

In this Opinion the parties have been heretofore referred to and will hereinafter be referred to in accord with their status in the lower Court. The City first filed a plea that it was not guilty as alleged in the declaration. Later it filed a plea to the effect that the taking was more

than one year before the action was commenced and therefore barred by the Statute of Limitations. It later filed a plea that it did not take the property in August of 1957, but that the action of taking the property was by the Department of Highways and Public Works of the State of Tennessee, and that the defendant was in no way liable, and further that it was not a proper party to the suit, but that the action should have been brought against Gibson County.

The case was tried before the Honorable John F. Kizer, Judge of the Circuit Court of Gibson County, Tennessee, to a jury on May 21, 1959, where the pleas that the City of Milan was not a proper party, was ordered stricken by the Court, on motion of the plaintiffs. Also the plea of the Statute of Limitations was overruled and disallowed by the Court.

To the plea of defendant that it had not taken the property but that it had been taken by the State of Tennessee, Department of Highways and Public Works, and that the suit should have been brought against Gibson County, Tennessee, the plaintiffs joined issue.

After hearing the proof, argument of counsel and charge of the Court, the jury returned a verdict in favor of the plaintiffs and against the defendant in the amount of $3,000 for value of the land actually taken and appropriated, and $8,000 incidental damages to the remaining property of the plaintiffs, and judgment was rendered against the City of Milan for $11,000 covering the total verdict of the jury. The defendant excepted to the judgment of the Court and filed a motion for new trial in which there were numerous grounds set forth. Item 4 therein, the only one pertinent to the cause in this Court, being as follows:

"The verdict was excessive. The verdict is so excessive as to indicate that it is the result of passion, prejudice or unaccountable caprice upon the part of the jury."

Each of the specifications in said motion for new trial, except Item 4 above quoted, the learned Trial Judge overruled, and as to said Item 4 the judgment of the Court is as follows:

"And the Court having heard and considered the Specification No. 4, and being of the opinion that the verdict of the jury was so excessive that it shocked the sensibilities of the Court and such as to evidence passion, prejudice or caprice on the part of the jury, the Court suggested a remittitur in the amount of $1,500.00 as far as the awarding of the jury as to actual damages is concerned, and a remittitur of $5,500.00 as far as the award of the jury as to incidental damages was concerned, upon penalty of granting the motion for a new trial unless plaintiffs make said remittitur."

The defendant excepted to the judgment of the Court in overruling its Specifications 1, 2, 3, 5, 6, 7, 8, and 9 and also in approving the verdict after suggesting the remittitur, and prayed an appeal to this Court.

The judgment of the Court further recites:

"Whereupon plaintiffs made said remittitur under protest and prayed an appeal to the next term of the Court of Appeals at Jackson, Tennessee, which prayer for appeal is allowed and granted upon condition that Plaintiffs effect said appeal by filing an appeal bond as required by law."

The parties were all granted sixty days in which to prepare and file a bill of exceptions. The defendants did not perfect its appeal, the plaintiffs did perfect their appeal and have assigned what they refer to as Assignments of Error Nos. 1, 2, 3, and 4, but each and all of these Assignments embrace only the remittitur provisions as it respects the determination by the Court that a remittitur of fifty percent of the verdict of the jury, or $1,500 for the value of the property actually taken, leaving his judgment therefor to be $1,500, and requiring and ordering a remittitur of $5,500, or 11/16 in incidental damages, reducing the verdict and award therefor to $2,500, or leaving a total verdict of $4,000 after directing a remittitur.

The appeal is therefore perfected and the Assignments of Error are based upon T. C. A. Section 27-118 and 27-119.

The question, therefore, posed in this Court is: Is the action of the learned Trial Judge in ordering either of the remittiturs supported by the proof or in other words, are the remittiturs so ordered by the learned Trial Judge excessive, and if so, in what amount?

In this case, as well as in all other cases of this character tried to the Court and a jury, we have said and the Supreme Court has said on many occasions that the jury is the first and best authority to determine the value of property taken and the amount of incidental damages thereto, or in other words that it is the best authority in fixing the amount of its verdict, and that the Trial Judge is the next best authority to determine the amount of damages or value of property.

(Authorities)

Davidson County Board of Education v. First National Bank, 202 Tenn. 9, 301 S. W. (2d) 905, 911; Stevens v. Moore, 24 Tenn. App. 61, 139 S. W. (2d) 710, 718.

The Appellate Courts have likewise said that the credibility of the witnesses is to be determined, first by the jury as reflected by its verdict. Davidson County Board of Education v. Bank, supra.

■ Where the amount of the verdict is supported by the evidence, and its amount is the only action on the part of the jury from which the Trial Court could find that the jury acted capriciously or from passion, prejudice or sympathy, it would become the duty of the Appellate Court to restore the remittitur ordered by the Trial Court and enter judgment upon the verdict as returned by the jury. Harber v. Smith, 40 Tenn. App. 648, 292 S. W. (2d) 468 and Garner v. State, 37 Tenn. App. 510, 266 S. W. (2d) 358. T. C. A Section 27-118.

The bill of exceptions in this cause is in narrative form approved by both firms of counsel representing the plaintiff and also approved by counsel representing the defendant. It is also approved by the learned Trial Judge, and before being approved, insofar as the mechanical record evidences, there is the recitation, "This was all the evidence introduced on the trial of the cause."

It also contains the following statement:

"On the hearing of the plaintiffs' motion for a new trial, the Trial Judge, Honorable John F. Kizer, stated in substance, 'That Judge Sam L. Felts had stated that if a verdict for damages was such as to

shock the sensibilities or conscience of the Trial Judge, it was his duty to suggest a remittitur, and that when the Jury returned the verdict in this case he (Judge Kizer) was most severely shocked'.''

In this bill of exceptions one of the narrative statements by the plaintiff Chapman, testifying as a witness, said further as follows:

"That in his opinion, the fair market value of the property taken, at the time of taking, was $———; that the damage occasioned to the rest of the property by reason of the taking amounted to $———. These amounts are left blank for the reason that counsel are unable to recall the exact figures testified to.''

Notwithstanding the fact that the bill of exceptions has been approved by counsel for both parties and by the Judge that tried the cause, and that it recited that it contained all the evidence introduced on the trial of the cause, a motion was made in this Court by counsel for the defendant, who is the defendant-in-error here, to strike the bill of exceptions because it shows on its face that it did not contain all the evidence, and the argument in behalf of the motion is based solely and alone upon the fact that "$———" (dollar blanks) occur in the above quoted paragraph from the narrative of the witness' statement.

Even without a motion to strike the bill of exceptions, if it appears to the Court that the bill of exceptions does not contain all of the evidence that is material to the issues properly raised in the Appellate Court, it would be the duty of the Appellate Court to strike the bill of exceptions.

This bill of exceptions, excluding the technical record of the transcript to which it is attached, together with the certificate of the learned Trial Judge and the approval of counsel for all parties, actually contains only seven typewritten pages, and it is not hardly conceivable that where the learned Trial Judge had ordered a 68¾% plus remittitur of the total verdict of the jury, he did not fully read and understand that the bill of exceptions contained all of the proof which was material to his determination of the amount of the ordered remittitur, and particularly is this true where he has immediately above his signature approving the bill of exceptions, the following statements are contained therein:

"Came the plaintiffs herein and tenders this their Bill of Exceptions to the Court, which, having been examined and found to be correct, is signed by the Judge presiding and ordered to be made a part of the record herein.

"It is further ordered by the Court that the exhibits filed herein be, and the same are made a part of the record.

"This 1st. day of September, 1959.

"John F. Kizer, Judge."

This Court in an Opinion by Judge Bejach in the case of Zanola v. Hall, 43 Tenn. App. 298, 307 S. W. (2d) 941, 944, in which we had the question made that the bill of exceptions did not contain all of the evidence, and in that case it did not contain certain charts, plats and diagrams, and where the Court had approved the bill of exceptions, we said:

"If any of the testimony omitted throws any light on this issue, counsel for defendants had the opportunity of insisting that same be included, along with that presented in the bill of exceptions as prepared by counsel for the plaintiffs. The same is true of the charts, plats, and diagrams which counsel for defendants says have not been included in the bill of exceptions."

We also said:

"The policy of counsel for the plaintiffs of eliminating from the record presented to this Court immaterial matters, and thus abridging the record, violates no rule of this Court and is an affirmative compliance with Rule 1 of the rules of the Supreme Court which requires the abridgment of records wherever practicable. This policy is, in our opinion, commendable rather than objectionable."

We further said:

"For these reasons, we think the motion of counsel for defendants in error should be overruled and disallowed."

■ We think the principle laid down by this Court in Zanola v. Hall, supra, applies in the present case with equal, if not more force than in that case, for the further reason that counsel for the defendant, City of Milan, approved, without any reservation so far as this record shows, the bill of exceptions, and where this is true, and the record as abridged contains the necessary recitation of all evidence, we must presume that all counsel and the Court recognized the fact that whether there should have been incorporated some dollar figures in the

"$——" in the quote from the bill of exceptions of the witness' testimony that whatever it might have been could not have affected the judgment of the Court or the verdict of the jury in the case. In the case of State of Tennessee for Use and Benefit of Henderson County ex rel. Southern Oil & Grease Co. v. Stewart, 46 Tenn. App. 75, 326 S. W. (2d) 688, 694, which opinion was also prepared by Judge Bejach for this Court, we again refer to the Opinion in the case of Zanola v. Hall, supra, and said:

"Futhermore, the bill of exceptions in the instant case is a narrative bill of exceptions; and it is common knowledge that that type of bill of exceptions is nearly always less complete than one made up from a stenographic report of the testimony adduced at the trial. The bill of exceptions in the instant case does contain the recital, 'This is all the evidence submitted at the hearing of the cause'; and, although, in spite of that recital, it does appear affirmatively, and independently of the narrative form, that some evidence was introduced at the hearing which is not included in the bill of exceptions; nevertheless, for the reasons stated, we think it is adequate and sufficient for presenting the issues to be disposed of on this appeal. The motion to strike the bill of exceptions and affirm the case, is accordingly denied."

Further we find the textwriter of Tennessee Procedure in Law Cases, Section 1881 headed "When Bill Should Be in Narrative Form or Much Abbreviated", saying:

"We have just stated that the general rule is that the bill must contain all of the evidence submitted. This may be departed from in two cases. Substantial parts of the evidence may be omitted when the par-

ties expressly stipulate that it may be done, the court consenting thereto; all of which must appear in the bill of exceptions. *When this is done the recital that it contains all the evidence will neccessarily be modified by that which appears otherwise in the bill of exceptions. But this will not take away from the recital its legal efficacy as an affirmation that it contains all the evidence considered by the court in passing upon the trial.* (Emphasis added.)

"Another instance where a part of the evidence may be omitted, and in fact should be left out, arises when the only questions reserved for review are those of law. It is folly to send up a swollen record of the evidence when one or two pages would suffice for every purpose of review. Trial judges should in such cases recite on the bill of exceptions that the legal questions are the only ones preserved for examination by the Appellate Courts and then see to it that only enough of the evidence to raise the questions is embraced in the bill. And it would be better for the trial judge to reduce it to a narrative form.

"The bill of exceptions should state all of the evidence. It may be in narrative form. It should not contain a report of the evidence in all of its minute particulars; instead, it should contain a statement of such facts as are material to the points to be raised in the appellate courts. The practice of setting out in the bill of exceptions the material evidence in narrative form, and not a verbatim copy of the entire body of the evidence, has been commended often by the appellate courts, and is the proper procedure." Glass v. Bennett, 89 Tenn. 478, 479, 14 S. W. 1085,

Chesapeake & Ohio Railway Co. v. Hendricks, 88 Tenn. 710, 13 S. W. 696, 698, 14 S. W. 488, Austin v. State, 157 Tenn. 202, 7 S. W. (2d) 806.

In the instant case the bill of exceptions clearly shows that the witness Walter Chapman was cross examined by counsel for defendant and he was asked nothing, so far as this record shows, about his statements with respect to dollar values of the strip of land taken, or his dollar value as to incidental damages.

Therefore, with the explanation contained in the bill of exceptions to the effect that counsel did not remember what figure was used, if any, coupled with the required statement, over the signature of the trial court, that the bill of exceptions ''contains all the evidence introduced on the trial'', and the further fact that the bill of exceptions is in narrative form, it is our opinion that we would not be justified in striking the bill of exceptions and affirming the judgment of the learned Trial Judge.

██ ██ It is very true that if the evidence in the case presents to the Trial Court such facts as that it would shock the conscience of the Court to enter judgment for the amount of the verdict of the jury, he should not do so, but should grant a new trial or make such adjustment of the verdict by way of remittitur, as would relieve such shock of conscience, except in cases, of course, where the verdict is so inadequate as to shock the conscience of the Court, and in such cases he can do nothing except grant a new trial. Of course, when the record comes to this Court of the trial had in the lower court, if the action of the learned Trial Judge is to be sustained in requiring remittiturs, the record must show to this Court such a state of facts that would be at least calculated to shock

the conscience of the Court, so we must examine the entire record, and under the law it requires us to set out the factual reasons for our conclusion of fact, we know of no better way to analyze just what the jury and the Court had before it than to show the values fixed by the testimony of witnesses, both of the strip of land taken and the incidental damages.

The plaintiff, John Best, testified:

That the true market value of the property taken, at the time of taking, was _____ $ 8,500.00

The amount of damage to remainder _____ $15,000.00

The witness, Talmage Hughes testified, after qualifying, that he operated a business in the City of Milan, was familiar with the property involved and knew the value of real estate in Milan; knew the value of the property taken at the time of taking was__ $ 7,500.00

He declined to express an opinion as to incidental damages_____ $_____

The witness Kenny McRae, after testifying that he was a licensed real estate dealer, and a real estate appraiser for the Federal Housing Authority, is experienced in handling real estate; that he was familiar with values of real estate in Milan and with

the involved property, said that in his opinion the value of the property taken at the time of taking was _____  $ 7,500.00

He further stated that he had no method of arriving at monetary figure with respect to incidental damages and declined to fix an estimate therefor _____                         $_____

The witness, Sam Denny, testified that he was a life-long resident of Milan, owned property directly across from involved property and operated a business at his location for years; had bought and sold real estate in Milan; had knowledge of other real estate sales and was familiar with the property involved. He fixed the value of the property taken, at the time and place taken at _____  $ 8,000.00

And incidental damage to the remainder of the property at minimum of _____  $ 5,000.00

And Maximum of_____                         $ 6,000.00

The witness Bill Markam testified that he rented the frame residence building located on the involved property at $40.00 a month before it was taken and

operated a radio and television repair shop therein. He further said that after the City lowered the level of the street and cut the bank back he was forced to move to a different location due to the fact that his building was no longer accessible to entrance by vehicles, and that people who were prospective patrons and entered on foot would have to climb a steep flight of steps. He was not asked a value of the property taken nor the incidental damages to the remainder_____ $_____  $_____

James Thomas testified that he was a resident of Milan for more than 50 years, had dealt in real estate extensively, had subdivided and sold large additions to the City of Milan, knew values of real estate in Milan and was familiar with the involved property, fixed the value of the property taken at the time and place taken at _____ $ 7,000.00

He fixed the incidental damage to the remainder of the property at_              $12,000.00

This witness is the only witness in this entire record that undertook to fix a value of the whole property before taking and the

value thereof immediately after the taking, and he said that the whole property before taking was, in his opinion worth_____ $40,000.00

After the taking it was worth____ $20,000.00

---

There are in the record several indentified and filed photographs of the property bought before and after the taking. The narrative evidence does not sufficiently describe these photographs and the date they were made, but from these original Exhibits 4 and 5, which were ordered sent up with the record, it is very clear said Exhibits to the testimony of Chapman were made sometime prior to the taking of the property and it is so stated in the narrative bill of exceptions. Exhibit 6 to his testimony is shown by the record to accurately portray the property as it existed after the taking, and the record so shows. Exhibits 4 and 5 show how that the equipment, such as tractors, was displayed in front of the building prior to the taking, and that there was sufficient room in front of the business house to display six tractors setting side by side facing the highway, and that tractors were displayed in the same manner in front of the building referred to as a residence or occupied as a radio and television repair shop.

Photograph, Exhibit 2 to the redirect examination of the witness Sam Denny, is shown to accurately show a view of the front of the property involved before taking and the bill of exceptions indentifies this Exhibit, but does not show when it was made.

| | | |
|---|---|---|
| We see that only five witnesses gave actual figures of their opinion of the value of the property taken at the time of taking. A total of these five amounts to____ | | $38,500.00 |
| The combined judgment of these five witnesses of the actual value of the property taken is an average of_____ | $ 7,700.00 | |
| Three witnesses gave figures of their opinion of the value of incidental damages of_____ | | $33,000.00 |
| Making the combined judgment of these three witnesses of the damages to the remaining property to be_____ | $11,000.00 | |

---

The only witness who gave a before and after value, having said that the property was worth $40,000 before taking and $20,000 after taking, would fix value after taking of the difference between the two at $20,000. It is noticeable that this witness had fixed his value of the property as taken at $7,000 and the incidental damages at $12,000, making a combined damage of $19,000, which is not far from the difference between his value before and after taking of the whole property.

After the proof by foregoing witnesses counsel for the plaintiffs in open Court,—the bill of exceptions shows —stated to the Court that they had several other witnesses to the extent of damage, and called the Court's

attention to the fact that the defendant had called no witnesses, at the time the witnesses were sworn, to testify as to the value, moved the Court to be permitted to close plaintiffs' proof with the leave to reopen the same if defendant offered proof as to value or damages, and the record discloses the fact that this motion was allowed.

The defendant offered no proof as to value or damages and only offered one witness, who testified to the physical situation prevailing before and after the taking.

This witness was Mr. Ingram, engineer for the State Highway Department, he testified that part of the street in front of the involved property was widened 15 feet at the north end and seven feet at the other end, and that the grade of the street proper was not lowered more than six inches at any one place.

The photograph "Exhibit 1 to the cross examination of Ingram" was introduced. It does not show when it was made, but a statement in the narrative bill of exceptions indicates that it was made after the property had been taken and the street widened and walks laid. Even though this witness states that the street was only lowered six inches at any point, he makes no statement about the incline left in front of the building, and it is apparent from these pictures that the bank in front of the building was cut in a slanting fashion, which clearly shows that the height of that slope from the top to the foot is not the same all the way across the front, but at every point is a great deal more than any depths that the street was lowered.

The bill of exceptions contains the following statement:

"All the witnesses for the plaintiffs who testified as to damage testified as to a strip of land 207 feet long along the entire frontage of the property and 22 feet in depth which 22 feet frontage would go back to the top of the terrace as shown in the photographs, Exhibit 1 to the cross-examination of Mr. Ingram, and Exhibit 6 of the direct examination of Mr. Chapman."

The record also shows that the owner of the property testified that the area left in the terraced space was of no value or use, even though it had been pointed out to them that they could, if they desired, use the land for any purpose, including construction of buildings up to the edge of the sidewalk.

Even if it be true that they could use this terraced area up to the edge of the sidewalk for building purposes, it is evident that it would leave a perpendicular bank in front of both the business house and the residence or that the business building and the residence would both have to be moved and the area on which they stood cut down to the sidewalk grade in order to give any practical area for building purposes.

It is significant to state that while the average of the five witnesses who testified to the value of the property at the time and place taken is $7,700 and only one of them fixed the value of the property at less than $7,500, the jury returned a verdict of the value of the property taken at $850, less than one-half of the average value placed by the five witnesses,—that is to say that the verdict of the

jury as to the value of the property taken is less than 40% of the average fixed by the five witnesses, and the verdict of the jury of $8,000 for incidental damages is only 72% of the average value fixed by the three witnesses who testified about incidental damages.

Section 23-1423, T.C.A. under which this action was brought, provides that in such cases "the jury shall lay off the land by metes and bounds and assess the damages, as upon the trial of an appeal from the return of a jury of inquest."

While that was not done in the instant case, the proof does show the length and width of the property taken to be 207 x 22 feet and across the entire lots owned by the plaintiff, deeds to which were filed as Exhibits and are properly identified and in the record. While this actual area contained only 4,554 square feet and is a fraction more than one-tenth of an acre, the value of the land taken is seemingly excessive, yet the only proof the jury had before it was more than double the verdict. Also the jury verdict for incidental damages at $8,000 being less than 75% of the average value fixed by witnesses of the incidental damages, there seems to be sufficient, competent and substantial proof to support the verdict.

If we were to arrive at any other conclusion except that the jury was warranted in its verdict from this proof, as revealed by the record in this Court, we would have to conclude that both the witnesses and the jury acted unfairly and that the proof is such as to discredit both the witnesses and jurors. We find ourselves unable to do so.

■ Now we emphasize the fact that we must decide this case, as in all other cases, upon the record in this Court and from our own experience we know that in this case it is a greatly condensed analysis of the proof introduced by the witnesses, we are bound by it and upon this record we are unable to see how the defendant can complain of the verdict of the jury, when it offered no witness as to values or incidental damages.

We are of the opinion, therefore, that the learned Trial Judge erred in making the remittitur complained about and the Assignments of Error are sustained, the remittitur restored. Judgment will be entered in this Court on the verdict of the jury for $3,000 the value of the land taken and $8,000 for incidental damages to remainder of property. Since we feel constrained to assess the defendant with cost no interest is allowed on the judgment. Enter judgment in accord with this Opinion.

Carney and Bejach, JJ., concur.