Charles W. SPEIGHT, Commissioner of
Highways of the State of Tennessee,
Petitioner-Appellant,

v.

L. C. GIBBS and wife, Vera Armistead
Gibbs, Defendants-Appellees.

Court of Appeals of Tennessee,
Middle Section.

June 30, 1972.

Certiorari Denied by Supreme Court
Nov. 20, 1972.

David M. Pack, Atty. Gen., State of
Tenn., Russell G. Lazenby, Jr., Asst. Atty.
Gen., State of Tenn., Nashville, T. H.
Haile, Cookeville, for petitioner-appellant.

Edward M. Turner, Carthage, for defendants-appellees.

## OPINION

TODD, Judge.

This is an eminent domain proceeding
wherein the petitioner, Commissioner of
Highways of the State of Tennessee, has
appealed from a jury verdict and judgment
in favor of the condemnees, L. C. Gibbs and
wife, Vera Armistead Gibbs, for $7,500.00
for property taken and $15,000.00 incidental damages to remainder, a total of
$22,500.00.

The assignments of error are as follows:

### I.

"There is no evidence to support the
verdict.

### II.

"The verdict is excessive.

III.

"The verdict is so excessive as to indicate that it resulted from passion, prejudice or unaccountable caprice.

IV.

"The Trial Court erred in overruling appellant's motion for a new trial or erred in not suggesting a substantial remittitur consistent with the evidence."

According to the maps presented by the condemnor, prior to the taking, the defendant's property consisted of 109.62 acres on the easterly side of State Highway No. 53, the Carthage-Gordonsville Road, which is also the access road from Carthage to U. S. Interstate Highway 40 nearby. The widening of said highway required the taking of a 4.9 acre strip across the entire frontage of said property.

A secondary road extended through defendant's property from State Highway 53 eastward to an industrial plant which adjoined defendants' property on the rear (east). 28.62 acres of defendants' land lay on the northerly side of said secondary road and was designated Tract 2–A. 81 acres of defendants' property lay on the southerly side of said secondary road and was designated Tract 2.

On Tract 2–A was located the seven-room residence of defendants which was situated about 170 feet from the old right-of-way. The front lawn sloped gently from the house to the highway where it was approximately level with the road. The drive extended directly from the house to the highway. The widening of the highway reduced the depth of the front lawn from 170 feet to 30 feet, and excavation for the new highway created a sheer rock precipice 14.8 feet in height. The drive no longer enters Highway 53, but extends from the house along the top of the precipice to the secondary road beside (south of) Tract 2–A.

Thus, whereas defendants formerly enjoyed a lawn and drive that sloped gently from their home directly to the public highway in front, they now have no direct access to Highway 53, but must enter and leave their premises by a circuitous route along a precipice.

On Tract 2 was located another residence which was used as a "Head Start School," with a playground adjoining. The highway has been raised several feet above this tract, so that access must be by a "ramp," or by way of the secondary road beside (north of) the tract.

The record gives considerable emphasis to the fact that the prior construction of the industrial plant to the rear of defendants' property and the access road to the plant through defendants' property substantially enhanced the usefulness and value of defendants' property. The two "corner lots" at the intersection of the plant road and Highway 53 are recognized as having commercial value.

The present taking consisted of a strip across the entire 1,680 foot frontage of defendants' two tracts. The depth of the property taken varied from 60 feet to 150 feet and averaged 100 to 110 feet.

The complaint of appellant is that the verdict of the jury was not supported by any evidence.

For convenience of consideration, the testimony and verdict have been tabulated as follows:

| Witness | Property Taken | Incidental Damages | Total |
|---|---|---|---|
| E. B. Woodard | 30,018.00 | 6,716.00 | 36,734.00 |
| Phoecian Gibbs | 32,000.00 | 6,478.80 | 38,478.80 |
| Bill Mercer | 6,135.00 | 700.00 | 6,835.00 |
| Dennis Higgins | 6,485.00 | 3,238.00 | 9,723.00 |
| Verdict | 7,500.00 | 15,000.00 | 22,500.00 |

It is to be noted that the verdict of the jury is within the appraisals as to value of property taken, is more than the largest appraisal of incidental damages, and is within the appraisals of total compensation due.

In Chambers v. Bradley County, 53 Tenn. App. 455, 384 S.W.2d 43 (1964), the land-

owner complained that the verdict of the jury for incidental damages to a particular tract was less than the lowest appraisal in the record. This Court declined to disturb the verdict and said:

"The evidence as to the value of the two tracts consists of the testimony of Mr. Mervin Chambers, one of the defendants, and a number of real estate experts testifying for the respective parties. As to Tract One, north of the road, their estimate of incidental damages ranged from $22,300.00 to $3,370.00, the latter figure being the amount fixed by Barton Smith, a witness for the condemnor. It is thus to be seen, as defendants point out, that the jury awarded as damages to Tract One $570.00 less than the damages as fixed by the lowest estimate of any of the expert witnesses.

.    .    .    .    .    .

"It is true there is no evidence to sustain a finding of incidental damages in the exact amount fixed by the jury in the taking of a portion of Tract One and that the undisputed expert testimony shows these damages to be $570.00 in excess of the amount awarded.

"[6] The general rule that the weight to be given expert or opinion evidence is for the jury is too familiar to justify extended citation of cases. As illustrating the rule, see Act–O–Lane Gas Service Co. v. Hall, 35 Tenn.App. 500, 248 S. W.2d 398; East Tenn. Nat. Gas Co. v. Peltz, 38 Tenn.App. 100, 270 S.W.2d 591. It is the universal practice to charge the jury that expert or opinion evidence is to be considered with caution and carefully weighed by the jury in the light of all the evidence.

"We do not appear to have a reported decision as to whether expert testimony must be accepted by the jury as conclusive in the absence of other conflicting evidence or whether jurors may draw upon their own general knowledge and refuse to accept the opinion of an expert witness as unreasonable or illogical.

"[7] Although cases to the contrary may be found, the general rule elsewhere is that, unless the subject of inquiry is of such technical or scientific nature that laymen may be supposed to have insufficient knowledge upon which to base a correct judgment, jurors are not required to accept expert or opinion evidence as conclusive even though uncontradicted but may draw upon the knowledge and experience which may be supposed to be common to all men and arrive at a conclusion contrary to uncontroverted expert testimony. Eaves v. City of Ottumwa, 240 Iowa 956, 38 N.W.2d 761, 11 A.L.R. 2d 1164; Clark v. Haggard, 141 Conn. 668, 109 A.2d 358, 54 A.L.R.2d 655; 20 Am.Jur. 1059, Evidence, Section 1208; 32 C.J.S. Evidence § 567, p. 378.

"[8] The rule is especially applicable in a case like the present where the jury must determine land values and incidental damages resulting from the taking, involving many and varied factors such as interference with ingress and egress and the shape and size of the remnants of land still owned by the condemnee. As to such matters jurors must always to some extent draw upon experience and reason." 53 Tenn.App., pp. 460, 461, 462, 384 S.W.2d pp. 45–56.

■ In the present case, the jury was shown pictures of the previously described front lawn and driveway before the taking and of the sheer rocky precipice remaining after the taking and excavation by the State. The loss of access to Highway 53 and the inconvenient approach by secondary road and re-routed driveway was also explained to the jury. These facts bring the present situation squarely within the expression of Chambers v. Bradley County as to "factors such as interference with ingress and egress."

There is another reason why the verdict of the jury should not be disturbed. The taking herein invoked a substantial loss of access to the public way.

■ The right of access to and from the public highway is one of the incidents of ownership of land, of which the owner cannot be deprived without compensation. 73 A.L.R.2d 656; 43 A.L.R.2d 1074–1079; 18 Am.Jur., Highways, §§ 158, 193 and cases there cited; 29A C.J.S. Eminent Domain § 105; 1 Antieau, Municipal Corporation Law, § 9.12, p. 607. See also City of Memphis v. Hood, 208 Tenn. 319, 345 S.W.2d 887; Hamilton County v. Rape, 101 Tenn. 222, 47 S.W. 416; Knox County v. Lemarr, 20 Tenn.App. 258, 97 S.W.2d 659; Shelby County v. Dodson, 13 Tenn. App. 392.

As stated in Brookside Mills v. Moulton, 55 Tenn.App. 643, 404 S.W.2d 258 (1965);

"[8, 9] Despite the declarations by the appellate courts of this state that the right of access to an abutting street is a property right—the loss or substantial impairment of which is to be compensated for by the condemning authority, without deduction—the trial courts, on occasion, have treated the loss of access as an element of incidental damages which can be offset by incidental benefits resulting from the construction of the public improvement. See State v. Rascoe, 181 Tenn. 43, 178 S.W.2d 392; Moulton, Comm'r v. Beene, decided by this Court on January 17, 1964. . . .

. . . . . .

" 'In the appellate court, a party is confined to the theory upon which the case was tried with his approval below.' Nashville Gas & Heating Company v. Phillips, supra [17 Tenn.App. 648,] 69 S. W.2d [914,] at page 924." 55 Tenn.App. pp. 651, 652, 404 S.W.2d p. 263.

In the present case, it does not appear clearly what theory was employed by the witnesses in arriving at their appraisals or by the jury in arriving at its verdict.

The charge of the Court in this connection was as follows:

"I charge you that if you find from a preponderance of the proof that the Plaintiff's means of ingress and egress from his premises, or their premises, to the road or highway was destroyed or impaired, whether there was left another way by which the property could be reached from another direction that the Defendants would be liable in damages. The impairment of the Plaintiff's right of way as it existed at the time the improvement began, or rather the impairment of the easement of access would render the State liable for damages resulting therefrom since it would be a taking of the property, at least to the extent of the value of the impairment to the right of ingress and egress."

From a consideration of the testimony heard by the jury, the exhibits they examined, and the charge received from the Court, it is reasonably inferrable that the jury was impressed with the severity of damage by impaired access and included in the verdict for incidental damages an amount which in the judgment of the jury was sufficient to compensate therefor. If this portion of the award needs support in the testimony, it may be said that the appraisers for defendants included loss of access as a part of property taken, but, under the charge of the Court, the jury saw fit to award this item, not as property taken, but as incidental damages.

In Chapman v. Mayor, etc., Milan, 48 Tenn.App. 196, 344 S.W.2d 773 (1960), the testimony as to value of land taken varied from $7,000.00 to $8,500.00, and, as to incidental damages, from $5,000.00 to $12,-000.00. The jury awarded $3,000.00 for land taken and $8,000.00 incidental damages. The Trial Judge reduced the awards by remittitur to $1,500.00 and $2,500.00 respectively. This Court restored the remittiturs and affirmed the verdict of the jury as originally rendered. In Chapman, as in the present case, there was a widening of a street with resultant encroachment and creation of embankment.

In Davidson County Board of Education v. First American National Bank, 202 Tenn.

9, 301 S.W.2d 905 (1956), the Supreme Court approved a jury verdict and said:

"[6, 7] The jury had before them complete evidence in the taking and the consequences of such taking. They had drawings, photographs and the opinions of some three or four real estate men for their analysis and consideration. The jury, apparently by their verdict did not accept any particular expert's theory but they took the whole thing as offered by both sides and using their own judgment on such things as well as the evidence introduced and from this arrived at their verdict. . . . . So it is that we have some evidence as to incidental damages and incidental benefits as well as the fact that the jury are supposed to be sensible men and had experience and they were entitled to take this experience into consideration in evaluating the evidence of these various witnesses. . . ." 202 Tenn., p. 20, 301 S.W.2d, p. 910.

In State Dept. of Highways v. Hurt, Tenn.App., 478 S.W.2d 775 (1971) this Court said:

"[7] Of course, an eminent domain proceeding is not identical with a tort action and, to some degree at least, eminent domain procedure is statutory. However, in the absence of statute, the precedents of common law, common sense and logic are of great and persuasive assistance in reaching the justice of a controversy arising out of public condemnation of private property." 478 S.W.2d, p. 781

■ The foregoing principle makes applicable the numerous decisions that the exact amount of damages need not be proven if the jury is given the benefit of sufficient facts from which damages may be reasonably estimated. See Ford Motor Co. v. Taylor, 60 Tenn.App. 271, 290, 446 S.W. 2d 521 (1969) and authorities cited therein.

Tennessee authorities cited by appellant condemnor do not support the insistence of appellant that the monetary verdict of the jury must be supported by mathematical monetary testimony. For example, in Davidson County Board of Education v. First American National Bank, quoted supra, the Supreme Court referred to drawings, and photographs as supporting the monetary conclusions of the jury. Pack v. Boyer, 59 Tenn.App. 141, 438 S.W.2d 754 (1968) emphasizes the evidence of injury to property by a fill or embankment and concludes:

"[7] The reported decisions involving the perplexing question presented here are, by no means, harmonious and therefore, no inflexible rule can be followed in fixing incidental damages in a case such as the one now before us, but each case of this nature must rest upon the facts and circumstances of that particular case.

"We have concluded that both the Commissioner and the landowners have had a fair and impartial trial and we are satisfied with the result thereof." 59 Tenn.App., p. 153, 438 S.W.2d, p. 760.

In State ex rel. Pack, Commissioner v. Hill, 56 Tenn.App. 410, 408 S.W.2d 213 (1965), this Court affirmed a verdict as reduced by remittitur and said:

"It has been our experience that there is no way to relate the jury verdict to the testimony of witnesses in such cases. The estimates of witnesses are so far apart, both as to values of land and incidental damages, after you examine carefully every particle of the proof, that the Courts are left to somewhat speculate how the jury in this, or any of the other similar cases we have had before us, arrived at their verdicts." 56 Tenn.App., pp. 415, 416, 408 S.W.2d, p. 215.

In Brady v. Correll, 20 Tenn.App. 224, 97 S.W.2d 448 (1936), this Court affirmed a verdict of only $300.00 in spite of the fact that all of the witnesses testified to a larger amount. It was observed in the opinion that some, if not all, of the witnesses estimated damages under an erroneous assumption. As suggested supra, in the present

case there are grounds to infer confusion as to allocation of compensation for loss of access to the public way which would explain the apparent inconsistency between the testimony and the verdict.

Appellant has cited a number of authorities from other states. The policy and pronouncements of the various states in regard to the latitude allowed juries in eminent domain cases are not harmonious. In 30 C.J.S. Eminent Domain § 310, p. 154 is found the following text:

"The commissioners or jurors cannot go outside the record evidence in making their award, and when the award exceeds the amount claimed by the landowner, or is less than the estimate of any witness, it may be set aside, although there are cases which hold that the mere fact that the jury or commissioners differ from the witnesses in their estimate, and award a sum smaller than the valuation given by such witnesses, or the award is less than the amount that the condemnor was required to deposit in court, is not necessarily ground for vacating the award, especially if there is other evidence on which the award may be based."

The liberal rule in Tennessee is, where there is testimony of monetary values and damages, or other competent evidence from which the jury might reasonably determine the amount of compensation, the verdict will not be set aside for lack of evidence to support it.

The record in this cause contains adequate evidence to support the verdict of the jury which will not be disturbed.

The judgment of the Trial Court is affirmed. The condemnor-appellant will pay the costs of this appeal.

Affirmed.

SHRIVER, P. J., and PURYEAR, J., concurs.